**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BERNADETTE RELLA,**

        **Plaintiff,**

**v.**                                                                    **6:19-cv-723 (NAM/ATB)**

**NEW YORK STATE OFFICE OF MENTAL HEALTH,**

        **Defendant.**
_____

**APPEARANCES:**

For Plaintiff:
James D. Hartt, Esq.
70 Linden Oaks, Third Floor
Rochester, New York 14625

For Defendant:
Attorney General of the State of New York
Brian W. Matula, Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Norman A. Mordue, Senior United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Plaintiff Bernadette Rella brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301, alleging claims of discrimination, retaliation, and hostile work environment. (Dkt. No. 1). Defendant New York State Office of Mental Health moves now under Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim. (Dkt. No. 7). Plaintiff opposes the motion, and Defendant has also replied. (Dkt. Nos. 13, 14). Defendant's motion to dismiss is denied, for the reasons that follow.

## II. BACKGROUND[1]

Plaintiff worked as a Mental Health Therapy Aide for the New York State Office of Mental Health at the Mohawk Valley Psychiatric Center. (Dkt. No. 1). Plaintiff alleges that she has a learning disability and "requires instruction through demonstration of the actual task instead of verbal explanation on how to complete the task." (*Id.*, ¶ 17). Plaintiff alleges that her learning disability relates to "difficulties and delays in [her] writing abilities, and reading comprehension skills, both of which cause her to learn differently than non-learning disabled persons such that she is indeed able to learn new tasks necessary to complete her job, but the method of teaching/assigning must be demonstrative as opposed to strictly in writing." (*Id.*, ¶ 40). Plaintiff alleges that her "learning disability was documented by Defendant as a result of Plaintiff's membership on the 55b program." (*Id.*, ¶ 34).

Plaintiff alleges that prior to becoming a Mental Health Therapy Aide, she had been a counselor at a Rehabilitation Center "at which she never had any problems with co-workers, and at which she won an award for advocacy of persons with mental health disabilities." (*Id.*, ¶ 30). Plaintiff alleges that she "was able to complete the essential functions of her job as a counselor notwithstanding her learning disabilities because her previous employer . . . accommodated her in terms of her requirements for learning job tasks." (*Id.*, ¶ 31).

Plaintiff alleges that in June of 2018, she began to experience discrimination at the Mohawk Valley Psychiatric Center based on her disability. (*Id.*, ¶ 15). Plaintiff alleges that a Registered Nurse ("RN") at her workplace, Michele Williams, "began to harass and intimidate Plaintiff for the way in which Plaintiff was completing a Census assignment." (*Id.*, ¶ 16). Plaintiff alleges that RN Williams knew about her learning disability and disregarded her needs.

---

[1] The facts are taken from the Complaint and documents incorporated by reference and are assumed to be true for the purposes of this decision. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

(*Id.*, ¶ 17). Plaintiff claims that when she informed RN Williams about her disability and need for hands-on learning, RN Williams "walked away from Plaintiff in an angry manner and completely failed to engage in the required interactive process." (*Id.*, ¶ 19). Plaintiff alleges that RN Williams "completely ignored Plaintiff's request for accommodation and . . . began to shame and humiliate Plaintiff as a result of her disabilities and need for specialized hands on learning." (*Id.*, ¶¶ 18, 21). Plaintiff alleges that this "mistreatment of Plaintiff also created a chilling effect on Plaintiff in terms of her efforts to glean the proper way to complete the Census assignment." (*Id.*, ¶ 22).

Plaintiff alleges that on June 23, 2018, her supervisor Sue Evans "pulled Plaintiff into her office to question her decision to divulge to Michele Williams the nature of her learning disabilities to which Plaintiff responded that she was not ashamed of her learning disabilities nor stigmatized by them." (*Id.*, ¶ 23). According to Plaintiff, "Evans further asked Ms. Rella if her job was too hard for her because of her learning disabilities, to which Plaintiff responded 'no,' but that she simply needed to ask more questions about assignments than non-learning disabled employees in order to properly do her job." (*Id.*, ¶ 24).

Plaintiff further alleges that RN Williams continued to treat her poorly, "in the sense that Plaintiff would receive angry glares from RN Williams while simply walking down the hallway." (*Id.*, ¶ 25). Plaintiff alleges that when she confronted RN Williams about the mistreatment, RN Williams stormed out of the room. Plaintiff also alleges that in late June 2018, she had to go out to her car to cry "as a result of the ongoing, outrageous harassment by Williams, including the slamming of the door, the angry stares, the yelling and the minimization of Plaintiff's disabilities." (*Id.*, ¶ 26). Plaintiff claims that she "complained to her supervisor

Sue Evans specifically about the hostile work environment," but Ms. Evans refused to intervene or stop the ongoing harassment. (*Id.*, ¶ 27).

On June 25, 2018, Plaintiff allegedly requested a shift-change "as a result of the . . . hostile work environment and discrimination." (*Id.*, ¶ 28). Plaintiff claims that she did not get the desired shift-change, "thus forcing her to continue to be subjected to a hostile work environment and disability discrimination in the workplace." (*Id.*, ¶ 29).

In late June 2018, Defendant allegedly "began to give Plaintiff negative feedback concerning her performance," which was "shortly after the issues regarding Plaintiff's accommodation requests and related complaints came to light." (*Id.*, ¶ 32). On July 9, 2018, Plaintiff submitted a complaint form directly to Mohawk Valley Psychiatric Center, wherein she alleged discrimination based on her learning disability. (Dkt. No. 1-2). Plaintiff alleges that "Defendant refused to work with Plaintiff, or to engage in the required interactive process leading to Plaintiff's inability to properly complete her Census assignment as expected through no fault of her own." (Dkt. No. 1, ¶ 35).

On July 13, 2018, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging that Defendant unlawfully discriminated against her in the course of her employment on the basis of her disability. (*Id.*, ¶ 13).

Plaintiff alleges that "in or about October of 2018, she was the subject of a positive performance review by Sue Evans that was later covered up and/or destroyed by a new Nurse Administrator and Head Supervisor named Gina Olivadese." (*Id.*, ¶ 36). Further, Plaintiff alleges that on October 24, 2018, while the NYSDHR investigation remained open, "Defendant, by and through Gina terminated Plaintiff's employment in retaliation for her then-ongoing

NYSDHR complaint as well as her internal complaints regarding Defendant's failure to accommodate her." (*Id.*, ¶¶ 14, 37–38).

Plaintiff also alleges that she was "the victim of workplace violence for which she filed complaints internally in the days prior to her termination, but Defendant did nothing to protect her." (*Id.*, ¶ 44). Plaintiff alleges that the workplace violence included "Michele Williams yelling and threatening Plaintiff outside of work on the day Plaintiff was terminated – October 24, 2018." (*Id.*). Plaintiff claims that she suffered "severe emotional distress" and lost wages as a result of the termination of her employment. (*Id.*, ¶¶ 49–50).

## III. STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

## IV. DISCUSSION

The Complaint alleges the following claims under the ADA: 1) disability discrimination; 2) hostile work environment; and 3) retaliation. (Dkt. No. 1). Plaintiff also alleges the same three claims under the NYSHRL. (*Id.*).

5

### A. Discrimination

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112.

In general, a plaintiff can allege disability discrimination under one of three theories: 1) intentional discrimination (disparate treatment); 2) disparate impact; and 3) failure to make a reasonable accommodation. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009). To plead a *prima facie* case of discrimination under the ADA, a plaintiff must allege that: "(1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)) (internal formatting and quotation marks omitted). "While a plaintiff is not required to make out a *prima facie* case in order to survive a motion to dismiss, the elements of the claim are instructive in analyzing whether a plaintiff has alleged sufficient facts giving rise to a claim." *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 612–13 (E.D.N.Y. 2017).

Here, Defendant argues that Plaintiff's discrimination claim must fail because she does not allege that she has a qualifying disability. (Dkt. No. 7-1, p. 6). Defendant also contends that any claim based on a failure to accommodate theory must fail because Plaintiff does not allege that she requested any accommodation. (*Id.*, p. 4).

Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include performing manual tasks, eating, walking, standing lifting, and working, as well as the operation of a major bodily function, including neurological and brain functions. 42 U.S.C § 12102(2)(A), (B). The term "substantially limits" is generally "construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA and is not meant to be a demanding standard." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69 n.3 (2d Cir. 2014) (quoting 29 C.F.R. § 1630.2(j)(1)(i)). Thus, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Plaintiff alleges that she has a learning disability that "requires instruction through demonstration of the actual task instead of verbal explanation on how to complete the task. (Dkt. No. 1, ¶ 17). Plaintiff further alleges that her learning disability relates to "difficulties and delays in Plaintiff's writing abilities, and reading comprehension skills, both of which cause her to learn differently than non-learning disabled persons such that she is indeed able to learn new tasks necessary to complete her job, but the method of teaching/assigning must be demonstrative as opposed to strictly in writing." (*Id.*, ¶ 40). Notably, the relevant regulations recognize both learning and reading as major life activities. 29 C.F.R. § 1630.2(i)(1)(i). Plaintiff alleges that she has difficulties with reading comprehension, which impairs her ability to learn new tasks as well as other people. Based on these facts and the broad coverage of the ADA, Plaintiff has sufficiently alleged a qualifying disability.

7

Next, Plaintiff argues that she requested an accommodation for her disability, pointing to the allegations that she told RN Williams of her need for hands-on learning. (Dkt. No. 13, p. 12). Plaintiff also contends that the complaint she submitted to her employer in July 2018 was sufficient to request an accommodation. (*Id.*, p. 13). Defendant argues that Plaintiff's request to RN Williams was insufficient because she was a co-worker, not an employer or supervisor. (Dkt. No. 14, p. 3). Further, Defendant points out that Plaintiff failed to check the box on the complaint form to request a reasonable accommodation. (*Id.*).

Generally, "it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (citing 29 C.F.R. § Pt. 1630, App.). While a formal written request is not required, the request "must be sufficiently direct and specific to give the employer notice of the needed accommodation." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18–19 (2d Cir. 2015) (citation omitted). In other words, an employer cannot refuse an accommodation that it was never asked to make. *Id.*

Here, Plaintiff claims that she informed RN Williams about her disability and need for hands-on learning to complete an assignment, but RN Williams ignored her. (Dkt. No. 1, ¶¶ 16, 19). Although RN Williams was not Plaintiff's supervisor, it is plausible that Plaintiff's request should have put Defendant on notice because RN Williams held a higher position than Plaintiff, who worked as an aide. Further, Plaintiff alleges that she met with her supervisor, Ms. Evans, and said that she "needed to ask more questions about assignments than non-learning disabled employees in order to properly do her job," (*Id.*, ¶ 24), which could be interpreted as a request for a reasonable accommodation. Plaintiff also described her learning disability in the workplace discrimination complaint. (Dkt. No. 1-2). While it is true that she did not check the box to

8

request a reasonable accommodation on that form, it is plausible that her allegations still conveyed the need for a reasonable accommodation. Accordingly, Plaintiff has sufficiently alleged that she requested a reasonable accommodation.

### B. Hostile Work Environment

Next, Defendant argues that Plaintiff's hostile work environment claim is not cognizable under the ADA, and even if it is, Plaintiff fails to state a claim. (Dkt. No. 7-1, p. 10). The first argument has been squarely rejected by the Second Circuit, which recognized that "disabled Americans should be able to assert hostile work environment claims under the ADA, as can those protected by Title VII under that statute." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019).

As to the sufficiency of Plaintiff's allegations, she must allege: "(1) that the harassment was 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment,' and (2) that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). In other words, Plaintiff must allege "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id.* at 374. Relevant factors thus include "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [the plaintiff's] work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff alleges that she was subjected to mistreatment by RN Williams on multiple occasions, from June to October 2018. According to Plaintiff, the harassment included:

storming out when Plaintiff asked for help, "angry glares," "slamming of the door," "yelling and the minimization of Plaintiff's disabilities." (Dkt. No. 1, ¶¶ 18–19, 21, 25–26). Plaintiff claims that RN Williams "shamed and humiliated" her "as a result of her disabilities and the need for specialized hands on learning." (*Id.*, ¶ 18). And Plaintiff alleges that she sought to avoid further harassment but was denied a shift-change. (*Id.*, ¶¶ 28–29). Plaintiff also alleges that on her last day at work, RN Williams yelled and threatened her. (*Id.*, ¶ 44).

Although Defendant argues that this alleged treatment does not rise to the level of creating a hostile work environment, (Dkt. No. 7-1, p. 12), the Second Circuit has cautioned against "setting the bar too high" at the motion to dismiss stage. *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). "While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse.*" *Id.* (citation omitted). Taking the above facts as true, Plaintiff has sufficiently alleged a hostile work environment that altered the conditions of her employment for the worse.

The next question is whether Plaintiff has sufficiently alleged a nexus to her disability. Defendant argues that the answer is no because, by Plaintiff's own allegations, RN Williams treated other staff poorly, regardless of whether they had a disability. (Dkt. No. 7-1, p. 13). Plaintiff's allegations in her federal complaint suggest that RN William harassed Plaintiff "as a result of her disabilities and need for hands on learning." (Dkt. No. 1, ¶ 18). On the other hand, Plaintiff's workplace complaint (which is incorporated into the federal one by reference) alleges that RN Williams bullied and belittled her and "other staff members . . . making our work environment unsafe." (Dkt. No. 1-2, p. 7). The latter could indicate that the alleged harassment was unrelated to Plaintiff's learning difficulties. However, drawing all reasonable inferences in

her favor, Plaintiff's allegations as a whole suggest that she was singled out for worse treatment on account of her disability.

Plaintiff has also alleged a sufficient basis for imputing the objectionable conduct to her employer. Specifically, Plaintiff alleges that her employer failed to intervene and stop the harassment, even after she complained to her supervisor, made a workplace complaint, and filed a NYSDHR complaint. (Dkt. No. 1, ¶¶ 13, 27; Dkt. No. 1-2). These facts, if true, show a specific basis for imputation. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 225 (2d Cir. 2004) (recognizing that objectionable conduct may be imputed to the employer upon a showing that "the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action"). In sum, Plaintiff has stated a claim for hostile work environment based on her disability.

### C. Retaliation

Defendant also argues that Plaintiff fails to state a claim for retaliatory discharge. (Dkt. No. 7-1, p. 13). In general, the ADA prohibits an employer from retaliating against an employee, stating in relevant part that: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge . . . under this chapter." 42 U.S.C. § 12203(a).

"In order to establish a prima facie case of retaliation, [the Plaintiff] must show that: (1) [s]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against h[er]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). The "allegations in the complaint need only give

11

plausible support to the reduced prima facie requirements." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (citation omitted).

Here, Defendant argues that "Plaintiff has failed to allege that she was subjected to a retaliatory discharge." (Dkt. No. 7-1, p. 13). Defendant contends that "[t]here is nothing in the Complaint establishing that the decision maker, Ms. Olivadese, was aware of any protected activity or that there was any causal connection between the protected activity and the adverse employment action." (*Id.*, pp. 13–14). But Plaintiff alleges that Ms. Olivadese "covered up and/or destroyed" a positive performance review in October 2018, just before her termination, which suggests an unlawful motive. Defendant's argument is better suited for summary judgment since it would be difficult at this stage for Plaintiff to say what Ms. Olivadese knew, or when. Moreover, Plaintiff has alleged a close temporal proximity between her complaints in July 2018 and her discharge in October 2018, which is sufficient to infer a causal connection at this stage. *See Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 359 (E.D.N.Y. 2008) ("[T]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action."). Therefore, Plaintiff has stated a claim for retaliation based on her termination.

### D. State Law Claims

The elements of Plaintiff's State Law claims are largely the same as the ADA. *See Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 F. App'x 739, 741 (2d Cir. 2014); *Krasner v. City of New York*, 580 F. App'x 1, 3 (2d Cir. 2014). Accordingly, based on the analysis above, Plaintiff has also stated claims for discrimination, hostile work environment, and retaliation under the NYSHRL.

### E. Sovereign Immunity

Before closing, the Court notes that the parties should at some point address whether Plaintiff's claims are barred by the Eleventh Amendment. *See Bd. of Trustees of U. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001) (finding that Title I of the ADA did not validly abrogate the States' sovereign immunity under the Eleventh Amendment). The Court declines to consider the issue of sovereign immunity *sua sponte* and takes no position at this time. *See McGinty v. New York*, 251 F.3d 84, 90 (2d Cir. 2001).

### V. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date: February 26, 2020
Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge

13