**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BERNADETTE RELLA,**

           **Plaintiff,**

v.                                                    **6:19-cv-723 (NAM/ATB)**

**NEW YORK STATE OFFICE OF MENTAL HEALTH,**

           **Defendant.**

_____

**APPEARANCES:**

James D. Hartt, Esq.
70 Linden Oaks, Third Floor
Rochester, New York 14625
_Attorney for Plaintiff_

Attorney General of the State of New York
Brian W. Matula, Assistant Attorney General
The Capitol
Albany, New York 12224
_Attorney for Defendant_

**Hon. Norman A. Mordue, Senior United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.**     **INTRODUCTION**

        Plaintiff Bernadette Rella brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290–301, alleging claims of discrimination, retaliation, and hostile work environment.  (Dkt. No. 1).  Now before the Court is Defendant New York State Office of Mental Health's motion for summary judgment.  (Dkt. No. 37).  Plaintiff opposes the summary judgment and moves to amend the Complaint.  (Dkt. Nos. 43–44).  Defendant opposes Plaintiff's motion to amend and has replied in support of summary judgment.  (Dkt. Nos. 45–46).

## II.   BACKGROUND[1]

At all relevant times, Plaintiff was employed by the New York State Office of Mental Health ("OMH"), which is a New York State agency.  (Dkt. No. 37-2, ¶¶ 4–5).  Specifically, Plaintiff worked as a Mental Health Therapy Aide at the Mohawk Valley Psychiatric Center. (Dkt. No. 37-4, p. 6).  She started in January of 2018, and her job consisted of assisting and monitoring patients.  (*Id.*, p. 7).  She was able to perform all the essential functions of this job. (Dkt. No. 37-2, ¶ 9).

Plaintiff testified that before she was hired, she informed OMH that she had reading and writing comprehension disabilities.  (Dkt. No. 37-4, p. 7).  Plaintiff testified that she has had these disabilities since she was young, and that she received accommodations in school such as having tests read to her, having longer to complete them, and being allowed to use a calculator. (*Id.*, p. 4).  After her employment with OMH, Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder.  (*Id.*, p. 39).

In February of 2018, Plaintiff started working with Registered Nurse ("RN") Michele Williams.  (Dkt. No. 37-4, p. 8).  On or about June 20, 2018, RN Williams asked Plaintiff to complete a census assignment.  (*Id.*, p. 10).  According to RN Williams, Plaintiff said that she did not know how to do it, that she had a learning disability, and that she needed to be shown in a hands-on way.  (Dkt. No. 44-2, p. 4).  RN Williams testified that she showed Plaintiff how to complete the assignment, and it was "no problem at all" to do so.  (*Id.*).  Plaintiff testified that that RN Williams did not help her, that RN Williams "stormed off and walked away," and that Plaintiff eventually figured out the assignment on her own.  (Dkt. No. 37-4, p. 10).

---

[1] The facts have been drawn from Defendant's statement of material facts, (Dkt. No. 37-2), Plaintiff's response and counterstatement of material facts, (Dkt. Nos. 44-14, 44-15), and the parties' submitted evidence to the extent it is in admissible form.

Plaintiff testified that three days later, on June 23, 2018, her supervisor Sue Evans asked about the incident. (Dkt. No. 37-4, p. 11). According to Plaintiff, Ms. Evans pulled Plaintiff into a room and said, "why are you going around saying you have disabilities." (*Id.*). Plaintiff testified that she said that she was not ashamed of her disabilities and asked, "aren't I allowed to ask questions," but Ms. Evans did not answer. (*Id.*, pp. 11–12). Plaintiff testified that Ms. Evans asked if Plaintiff's job was too hard for her, and Plaintiff said "no," but the question made her feel uncomfortable. (*Id.*). Plaintiff testified that RN Williams was also in the room and Plaintiff told her that "she was being discriminating," and RN Williams gave her an "evil look" and said, "you and your big words." (*Id.*, p. 20).

According to Plaintiff, on June 25, 2018 she asked for a shift change due to these incidents. (Dkt. No. 37-4, p. 7). Plaintiff's supervisors agreed to move her to a different ward to avoid RN Williams. (Dkt. No. 37-2, ¶¶ 32–34).

On June 27, 2018, Plaintiff submitted a "Workplace Violence Reporting Form," wherein she alleged that she was subjected to verbal abuse, disability discrimination, harassment, and belittlement by RN Williams and Ms. Evans. (Dkt. No. 37-6). Plaintiff alleged that RN Williams refused to explain the census assignment on June 20th, even though Plaintiff told her that she was a hands-on learner. (*Id.*, pp. 2–3). Plaintiff alleged that RN Williams yelled at her and made her feel stupid. (*Id.*). Plaintiff also repeated her allegations about the meeting with Ms. Evans on June 23rd. (*Id.*, pp. 3–4). Plaintiff added that when she left work that day, she went to her car and cried because she was so upset. (*Id.*, p. 4).

On July 9, 2018, Plaintiff submitted an ADA Request/Complaint Form, wherein she repeated her allegations about RN Williams and Ms. Evans. (Dkt. No. 44-8). According to Plaintiff, she was told to contact an individual named Vicky Eudell regarding an

accommodation, but the process went nowhere.  (Dkt. No. 37-4, p. 15).  According to OMH, Plaintiff never met or contacted Ms. Eudell, and "there is no record of [Plaintiff] requesting a reasonable accommodation."  (Dkt. No. 37-12, p. 2).

Plaintiff alleges that on July 10, 2018, RN Williams stared at her, and Plaintiff turned away and walked out the door.  (Dkt. No. 37-5, p. 15).  RN Williams was known to stare at other people as well.  (Dkt. No. 37-4, ¶ 38).

On July 12, 2018, Plaintiff received a competency assessment completed by Ms. Evans, who found that Plaintiff was mostly effective but needed to improve in several areas.  (Dkt. No. 44-12).  On July 13, 2018, Plaintiff submitted another "Workplace Violence Reporting Form," wherein she alleged that she was subjected to verbal abuse, threats, stalking, and harassment by RN Williams.  (Dkt. No. 37-7).  Specifically, Plaintiff said that RN Williams glared at her and gave her the "evil eye."  (*Id.*, p. 2).  That same day, Plaintiff filed a complaint with the New York State Division of Human Rights, alleging that she was discriminated against based on her disabilities.  (Dkt. No. 44-10).

On July 18, 2018, Plaintiff emailed several supervisors at OMH and alleged that RN Williams and Ms. Evans had been "very discriminating toward my disabilities and very harassing."  (Dkt. No. 44-5, p. 2).  Plaintiff also alleged that she had received an inaccurate evaluation from Ms. Evans.  (*Id.*).  Plaintiff claimed that the situation made her feel uncomfortable and unsafe.  (*Id.*).  Plaintiff was told that her complaint would be handled by Human Resources.  (*Id.*, p. 3).

Plaintiff filed additional complaints on October 13, 2018 and October 24, 2018, alleging that RN Williams "stared her down," gave her the "evil eye," and yelled at her in the parking lot. (Dkt. Nos. 37-8, 37-9; *see also* Dkt. No. 37-5, p. 15).  On or about October 24th, Plaintiff

received another competency assessment, this one showing more criticism and areas for improvement.  (Dkt. No. 44-11).

Plaintiff's employment was terminated on October 24, 2018 in a meeting with Gina Olivadese and Diana Rivera, respectively the Head Supervisor Nurse Administrator and head of Human Resources.  (Dkt. No. 37-2, ¶¶ 41, 51).  The termination letter was signed by Debbie Ultsch, Chief Nursing Officer, and Mark Cattalani, M.D., Executive Director.  (Dkt. No. 37-11).  According to OMH emails, the termination was recommended by TeNeathia Wesolowski, the Director of Diversity Management, on the basis that Plaintiff retaliated against staff who made statements in connection with her unsubstantiated Human Rights complaint.  (Dkt. No. 37-10).

In a report dated January 18, 2019, OMH stated that after Plaintiff filed her Human Rights complaint, she interfered with the investigation by contacting witnesses and became "irate toward witnesses if they said something she did not like or agree with."  (Dkt. No. 37-12, p. 1).  Plaintiff allegedly "told staff that she was going after Michele Williams and was going to have her nursing license taken away."  (*Id.*).  As a result, Plaintiff was found to have retaliated against staff and violated agency policy, which led to her termination.  (*Id.*).

According to Plaintiff, she was told that her termination was the result of not following policy rules and a negative performance review.  (Dkt. No. 44, p. 21).  Plaintiff admits filing a complaint concerning RN Williams's nursing license but denies contacting staff.  (*Id.*, p. 24).  Plaintiff claims that she was terminated based on disability discrimination and retaliation for filing discrimination complaints against her employer.  (Dkt. No. 37-5, pp. 22–23).

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Id.* at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may meet its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

If the moving party meets its burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24. "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.    DISCUSSION

The Complaint alleges the following claims under the ADA and NYSHRL: 1) disability discrimination; 2) hostile work environment; and 3) retaliation.  (Dkt. No. 1).  Defendant argues that Plaintiff's claims for discrimination and retaliation under the ADA and NYSHRL are barred by the doctrine of sovereign immunity.  (Dkt. No. 37-1, pp. 7–10).  Defendant further contends that all of Plaintiff's claims are subject to summary judgment on the merits.  (*Id.*, pp. 10–24).

### A.  Sovereign Immunity

The Supreme Court has long held that the Eleventh Amendment bars all federal court claims against States, including by the States' own citizens, absent their consent to such suit or an express statutory waiver of immunity.  *See, e.g.*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). Further, sovereign immunity extends not only to the States but also to State agencies.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142–47 (1993); *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'").  Here, there is no dispute that OMH is an agency of New York State.  *See also Dimps v. N.Y. State Office of Mental Health*, 777 F. Supp. 2d 659, 661–62 (S.D.N.Y. 2011) (finding that OMH is a State agency for Eleventh Amendment purposes).  There is also no dispute that Plaintiff's ADA discrimination claim is brought pursuant to Title I of the ADA, which prohibits discrimination against individuals with disabilities in employment.  (*See* Dkt. No. 1, ¶ 1).

Courts recognize three exceptions to sovereign immunity.  "First, a State may waive its Eleventh Amendment defense."  *Winokur v. Off. of Ct. Admin.*, 190 F. Supp. 2d 444, 448

(E.D.N.Y. 2002) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527

U.S. 666, 670 (1999)).  "Second, Congress may abrogate the sovereign immunity of the States

by acting pursuant to a grant of constitutional authority."  *Id.* (citing *Kimel v. Fla. Bd. of

Regents*, 528 U.S. 62, 80 (2000)).  "Third, under the *Ex parte Young* doctrine, the Eleventh

Amendment does not bar a suit against a state official when that suit seeks . . . prospective

injunctive relief."  *Id.* (internal quotation marks omitted) (citing *Seminole Tribe of Fla. v.*

*Florida*, 517 U.S. 44, 73 (1996)) (italics and ellipsis in original).

      As relevant here, the Supreme Court has held that Congress did not abrogate the States'

sovereign immunity by enacting Title I of the ADA.  *See Bd. of Trustees of U. of Alabama v.*

*Garrett*, 531 U.S. 356, 374 (2001).  Plaintiff does not the invoke the *Ex parte Young* exception,

nor could she at this point.[2]  Rather, Plaintiff argues that Defendant waived its sovereign

immunity "by its own affirmative conduct" when it gave her an ADA Request/Complaint Form.

(Dkt. No. 44, pp. 9–10).  However, an effective waiver of sovereign immunity requires a

knowing and intentional relinquishment or abandonment of a right or privilege.  *See Garcia v.*

*S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 114 (2d Cir. 2001).  In assessing whether a

State has made a knowing and intentional waiver of sovereign immunity, the Supreme Court has

instructed that courts should indulge "every reasonable presumption against waiver."  *Id.*

(quoting *Coll. Sav. Bank.*, 527 U.S. at 682).

      Here, the record shows that Defendant provided Plaintiff with a form which invited her to

"request [a] reasonable accommodation or file a complaint based on disability in the provision of

services, activities, programs, or benefits."  (Dkt. No. 44-8, p. 2).  The form was to be submitted

---

[2] Although Plaintiff seeks injunctive relief, (Dkt. No. 1, p. 11), she failed to name as a defendant a State official acting in his or her official capacity, as required to invoke the *Ex parte Young* exception.  *See Palmer v. New York State Off. of Ct. Admin.*, 526 F. App'x 97, 99 (2d Cir. 2013) (citing *Santiago v. N.Y. State Dep't of Corr. Servs.*, 945 F.2d 25, 32 (2d Cir. 1991)).

to the Public Accommodation Coordinator of Mohawk Valley Psychiatric Center.  (*Id.*).  The instructions accompanying the form state that it was to be "used by anyone who wishes to file a complaint alleging discrimination on the basis of disability in the provision of services, activities, programs, or benefits by the Mohawk Valley Psychiatric Center."  (*Id.*, p. 5).  The instructions state that "[e]mployment-related complaints of disability discrimination are covered elsewhere, in policies available from the human resources office of the Mohawk Valley Psychiatric Center." (*Id.*, p. 5).  The instructions further state that the ADA Coordinator would meet with the complainant within fifteen days to "discuss the complaint and possible resolutions."  (*Id.*).

Based on these facts, the Court finds that OMH did not waive its sovereign immunity by providing Plaintiff with the ADA form.  The instructions make clear that the form was intended only as part of an administrative process to address disability issues with respect to the provision of services, activities, programs, or benefits (Title II of the ADA).  The instructions specify that the form *did not* cover complaints regarding disability discrimination in employment (Title I of the ADA).  There was no discernible intent to relinquish or abandon any right or privilege, much less an express waiver that invited a federal claim seeking monetary damages.  Because OMH did not waive its sovereign immunity, Plaintiff's ADA discrimination claim is barred.  *See also Briggs v. New York State Dept. of Transp.*, 233 F. Supp. 2d 367, 373 (N.D.N.Y. 2002) (finding that the plaintiff's ADA claims against State agency were barred by sovereign immunity).

For the same reasons, Plaintiff's additional claims under the ADA for hostile work environment and retaliation, as well as her claims under the NYSHRL for discrimination, hostile work environment, and retaliation, are all barred by sovereign immunity.  *See Baez v. New York*, 629 F. App'x 116, 118 (2d Cir. 2015) (finding that the plaintiff's ADA and NYSHRL claims against New York State were barred by sovereign immunity because "Congress has not

abrogated the states' sovereign immunity from suit under Title I of the ADA" and "New York State has not consented to be sued in federal court under the NYSHRL"); *see also Jackson v. Battaglia*, 63 F. Supp. 3d 214, 221 (N.D.N.Y. 2014) (dismissing the plaintiff's ADA and NYSHRL claims against New York State defendants because they did not waive their Eleventh Amendment immunity or consent to be sued); *Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) (same); *Dollinger v. New York State Ins. Fund*, No. 14-cv-908, 2015 WL 8491013, at *4, 2015 U.S. Dist. LEXIS 165421, at *9 (N.D.N.Y. Dec. 10, 2015) (dismissing the plaintiff's ADA claims for hostile work environment and retaliation based on sovereign immunity), *aff'd*, 726 F. App'x 828 (2d Cir. 2018).

### B.  Motion to Amend

In an attempt to evade sovereign immunity, Plaintiff now seeks to amend the Complaint and add claims for discrimination, hostile work environment, and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*  (Dkt. No. 43).  According to Plaintiff, "Defendant does not have sovereign immunity with respect to The Rehabilitation Act of 1973, which is the statute Plaintiff now seeks to add to her Complaint."  (Dkt. No. 43-2, p. 2).

The Second Circuit has found that Congress abrogated the States' sovereign immunity when it enacted Section 504 of the Rehabilitation Act, but only for "any program or activity receiving Federal financial assistance."  *T.W. v. New York State Bd. of L. Exam'rs*, 996 F.3d 87, 92 (2d Cir. 2021) (citing 42 U.S.C. § 2000d-7(a)(1) and 29 U.S.C. § 794(a)).  There appears to be no dispute in this case that OMH receives federal funding and therefore is subject to suit under the Rehabilitation Act.  Nonetheless, Defendant argues that Plaintiff should not be permitted to amend the Complaint to add new claims under the Rehabilitation Act.  Specifically, Defendant contends that the proposed amendments "would cause substantial prejudice to the

Defendant based upon the Plaintiff's delay in seeking the amendment without a valid excuse or justification." (Dkt. No. 46, p. 3).

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that courts should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, leave to amend should be freely granted unless there is a "substantial reason" for denial such as futility, excessive delay, or undue prejudice to the opposing party. *See Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000). However, "[t]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted." *Sacerdote v. New York U.*, 9 F.4th 95, 115 (2d Cir. 2021). "It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only upon a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)." *Id.* (citing Fed. R. Civ. P. 16(b)(4)). "Good cause" depends on the diligence of the moving party. *See Parker v. Columbia Pictures Industries*, 204 F.3d 326, 340 (2d Cir. 2000).

Here, Plaintiff commenced this action by filing the Complaint on June 19, 2019. (Dkt. No. 1). On March 24, 2020, the Court issued a Uniform Pretrial Scheduling Order, which set a deadline of May 4, 2020 for amendment of pleadings. (Dkt. No. 20). Now well over a year after that deadline expired, Plaintiff seeks to amend the Complaint to avoid summary judgment on an alleged "technicality," that being sovereign immunity. (Dkt. No. 43-2, p. 4). But Plaintiff cannot claim to be surprised by Defendant's assertion of sovereign immunity—an issue that goes to the heart of the Court's jurisdiction. In a decision dated February 26, 2020, the Court noted that "the parties should at some point address whether Plaintiff's claims are barred by the Eleventh Amendment," and specifically cited to authority on point. (Dkt. No. 16, p. 13). Thus, Plaintiff was given clear warning that her claims were susceptible to dismissal on sovereign

immunity grounds, which ought to have prompted her current motion.  Yet Plaintiff offers no excuse or explanation for not acting sooner, and she has adduced no evidence of diligence.[3] Therefore, the Court finds that Plaintiff has not demonstrated good cause for her failure to comply with the Court's deadline.

The Court also finds that allowing Plaintiff's amendments would cause Defendant significant if not substantial prejudice.  While Plaintiff's proposed claims would not require additional discovery, Defendant has already filed a thorough motion for summary judgment. Indeed, courts have held that "leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier." *Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (citing *Berman v. Parco*, 986 F. Supp. 195, 217 (S.D.N.Y. 1997) and other cases).  As discussed above, Plaintiff had ample notice of the issue of sovereign immunity and could have added the proposed claims much earlier.

Accordingly, given Plaintiff's excessive delay in seeking amendment, the complete absence of a showing of good cause, the prejudice to Defendant, and the juncture of the case, Plaintiff's motion to amend must be denied.  *See Parker*, 204 F.3d at 340 (holding that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause"); *see also Bader v. Spec. Metals Corp.*, 985 F. Supp. 2d 291, 304 (N.D.N.Y. 2013) (denying motion to amend where the plaintiff failed to move to amend in a timely fashion and failed to show good cause for delay).

---

[3] Plaintiff has not submitted a supporting affidavit as required by N.D.N.Y. L.R. 7.1(b).

V.      **CONCLUSION**

For these reasons, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt. No. 37) is

**GRANTED**; and it is further

**ORDERED** that Plaintiff's Motion to Amend/Correct the Complaint (Dkt. No. 43) is

**DENIED**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is dismissed with prejudice; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to

the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED.**

Date:   January 20, 2022
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge